IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANGEL FLIGHT OF GEORGIA, INC., <br><br> Plaintiff <br><br> v. <br><br> ANGEL FLIGHT SOUTHEAST, INC. and ANGEL FLIGHT AMERICA, INC., <br><br> Defendants. | CIVIL CASE NO. <br> 1:03-CV-3620-JTC |

**O R D E R**

This matter is currently before the Court on Defendant Angel Flight Southeast, Inc.'s motion for summary judgment [#54] on Counts I through V of Plaintiff's first amended Complaint. For the reasons set forth herein, the motion is **DENIED**.

I. **Factual Background**[1]

Plaintiff Angel Flight of Georgia, Inc. ("AF-GA") is an Atlanta-based non-profit organization that helps persons with medical and financial difficulties by arranging and providing free air transportation to and from hospitals and other medically-related destinations. AF-GA was formed in

---

[1] Except where indicated, the facts in this section are taken from the undisputed evidence in the record. The Court construes the facts in the light most favorable to Plaintiff, the nonmovant.

1983 and was formally incorporated in 1985. It began as a "chapter"[2] of the American Medical Support Flight Team ("AMSFT") and officially changed its corporate name to Angel Flight of Georgia, Inc. in 1999. Despite its name, since its inception AF-GA has provided its services to individuals in Georgia, Alabama, Mississippi, Tennessee, North Carolina, and South Carolina (the "Territory"). AF-GA has also used the "ANGEL FLIGHT" mark since that time and was the first organization to do so in the Territory.

In the mid-1980's, after Plaintiff AF-GA was formed, Defendant Angel Flight Southeast, Inc. ("AF-SE")[3] was formed in Florida with the aid of AF-GA's founder, Jim Shafer. Similar to AF-GA, this organization began as a "chapter" of AMSFT and was later incorporated in Florida in 1986. In 1992, AF-SE officially changed its name to "Angel Flight of Florida, Inc." It later changed its name in 1997 to "Angel Flight Southeast, Inc."

Prior to 1999, AF-SE provided services only to Florida residents or individuals seeking treatment in Florida medical facilities. For a two-year period ending in November 1999, Defendant AF-SE coordinated AF-GA

---

[2] Plaintiff disputes that it was a chapter of any organization. Accordingly, the Court uses the term only to discuss the informal affiliation between numerous similar organizations which formed contemporaneously to provide similar services.

[3] Defendant Angel Flight America, Inc. ("AFA") does not join in Defendant AF-SE's motion for summary judgment. Accordingly, any reference to "Defendant" is to AF-SE.

missions in the Territory.  Pursuant to the Mission Coordination Agreement, however, these flights remained AF-GA missions flown by AF-GA pilots on behalf of AF-GA patients.  Defendant was paid only for its coordination services.

Plaintiff AF-GA avers that it first became aware that Defendant AF-SE was conducting business in the Territory in 2001 when it learned that AF-SE was planning to open an office in Augusta, GA.  Shortly thereafter, and continuing through the institution of this suit, AF-GA became aware of a number of incidents of consumer confusion.  For example, AF-GA documents several instances where persons interested in donating money to AF-GA mistakenly sent their contributions to AF-SE.  The record also shows that four individuals affected by Hurricane Katrina mistakenly contacted Defendant AFA for help when they intended to contact Plaintiff.  In addition, AF-GA points to multiple incidents where the news media has mistakenly confused and reported the activities of AF-GA for AF-SE, and vice versa, leading to further consumer confusion.  Moreover, Plaintiff avers that Defendant's use of "ANGEL FLIGHT" in the Territory has led to reputational harm.  For example, a vendor of fuel and other private aircraft services called AF-GA and accused it of stranding patients, when in fact the patients were stranded by AF-SE.  In addition, a vendor of fuel and longtime AF-GA

contributor approached AF-GA's executive director and demanded to know why its pilots were requesting fuel discounts for non-patient flights, when in fact, AF-SE's pilots were the ones making those requests.

## II. Summary Judgment Standard

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The movant carries the initial burden and must show the Court that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U .S. 317, 325, 106 S. Ct. 2548, 2554 (1986). "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324, 106 S. Ct . at 2553 (quoting Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986). Resolving all doubts in favor of the nonmoving

party, the Court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Id.

## III.  Analysis

Defendant AF-SE has moved for summary judgment on all counts in the Complaint relating to AF-SE contending that Plaintiff's claims are barred under the doctrine of estoppel by laches.[4]  Estoppel by laches may be raised as an equitable defense to trademark infringement when a party has unreasonably delayed in bringing its claims.  See Kason Indus., Inc. v. Component Hardware Group, Inc., 120 F.3d 1199, 1203 (11th Cir. 1997).  Defendant AF-SE argues that even if the Court presumes AF-GA's allegations of prior use and likelihood of confusion are true, it is still entitled to summary judgment because AF-GA brings this claim after over two decades of the parties' coexistence using the disputed mark.

To prevail on the defense, Defendant AF-SE must show: "(1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that

---

[4] Defendant focuses its discussion primarily on Plaintiff's claim for trademark infringement under 15 U.S.C. § 1125(a) (Count II).  The parties do not dispute that, for these purposes, Plaintiff's claims for false advertising under 15 U.S.C. § 1125(a) (Count III), violation of the Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372 (Count IV), common law trademark infringement, unfair competition, and deceptive trade practices (Count V), and declaration of superior rights in the territory (Count I) are governed by the same standard.  Accordingly, the Court will address the laches issue in the trademark infringement context with the understanding that the outcome will apply with equal force to all counts.

there was undue prejudice to the party against whom the claim is asserted." Id. (citing AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1545 (11th Cir. 1986)). Viewing the facts in the light most favorable to Plaintiff AF-GA, genuine issues of material fact exist with respect to these three elements; summary judgment is therefore inappropriate.

For example, with regard to delay in bringing the claims, the Lanham Act does not describe what constitutes an impermissible delay nor does it contain a statute of limitations.  However, for purposes of this inquiry, the Eleventh Circuit has borrowed from the closest analogous state law and held that the four-year period applicable to similar causes of action under Georgia's Uniform Deceptive Trade Practices Act ("UDTPA") governs the inquiry in Lanham Act cases.  See id. at 1203-05.  This period is not an absolute bar, however.  As noted in Kason, laches is an equitable doctrine to be applied flexibly.[5]  Id. at 1203.

In calculating delay, the clock begins at the point in which the plaintiff

---

[5] As noted by Professor McCarthy, this limitations period provides a presumption of sorts:
> [I]f a trademark infringement claim is filed within the analogous state limitations period, a strong presumption is created that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to some or all remedies sought in the suit.

5 McCarthy on Trademarks and Unfair Competition § 31:23 (4th ed.) (emphases omitted).

"knows or should know she has a provable claim for infringement." <u>Id.</u> at 1206; see also <u>ProFitness Physical Therapy Center v. Pro-Fit Orthopedic & Sports Physical Therapy, P.C.</u>, 314 F.3d 62, 70 (2d Cir. 2002) ("[A] plaintiff should not be obligated to sue until its right to protection has ripened such that plaintiff knew or should have known, not simply that defendant was using the potentially offending mark, but that plaintiff had a provable infringement claim against defendant."). The clock stops for purposes of calculating delay when the defendant is notified of plaintiff's objections. <u>See Armco, Inc. v. Armco Burglar Alarm Co.</u>, 693 F.2d 1155, 1162 (5th Cir. 1982).

Plaintiff informally notified Defendant of its objections to the use of "ANGEL FLIGHT" in the Territory on May 8, 2003 and filed suit on November 25, 2003. Thus, working backwards, if Plaintiff AF-GA had a provable claim for trademark infringement prior to May 8, 1999, its delay would carry a presumption of unreasonableness. Viewing the facts in the light most favorable to Plaintiff, however, shows that Plaintiff's claim of trademark infringement did not become provable until it was within the four-year window. At the earliest, Plaintiff AF-GA's cause of action did not become provable until after the Mission Coordination Agreement was terminated in November 1, 1999. Although it is not clear from the record, its claim of infringement more likely became provable in 2001 when AF-GA learned that

7

Defendant AF-SE intended to open an office in Augusta, GA, i.e., inside the Territory, and at which time the numerous above-referenced incidents of actual confusion began to occur. Accordingly, because AF-GA's claims "ripened" within the four-year limitations period, they are not barred by laches.

There is a second, and perhaps more important basis on which to deny summary judgment on the issue of laches. As noted by the Kason court, "if the likelihood of confusion is inevitable, or so strong as to outweigh the effect of the plaintiff's delay in bringing a suit, a court may in its discretion grant injunctive relief, even in cases where a suit for damages is appropriately barred." Kason, 120 F.3d at 1207; see also id. ("[B]ecause of the public interest in preventing the deception of consumers, delay by the trademark owner will not ordinarily disable it from obtaining an injunction if there is strong evidence of likely or actual confusion.") (citing Restatement (Third) of Unfair Competition § 31, cmt. e (1995)).

In this case, there can be no question that likelihood of confusion is strong – Defendant asked the Court to presume as much for purposes of this motion and it is evidenced by the numerous incidents of actual confusion referenced above. Further, Plaintiff AF-GA seeks only injunctive relief. (Pl.'s Resp. Mot. Summ. J. at 14.) Thus, even if Plaintiff had unreasonably delayed

in asserting its rights to the "ANGEL FLIGHT" mark, it would be inappropriate to grant Defendant's motion for summary judgment on the ground of estoppel by laches because it is in the public interest to prevent consumer confusion. Accordingly, Defendant's motion for summary judgment on all counts based on laches is **DENIED**.

Finally, Defendant also moves for summary judgment on Plaintiff's claim of false advertising under 15 U.S.C. § 1125(a) (Count II) on the merits. It claims, in four short sentences, that it is entitled to summary judgment because there is no evidence that its advertisements have been in any way false or misleading. An advertisement is false or misleading "if the challenged advertisement is literally false, or if the challenged advertisement is literally true, but misleading." Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002). In the light most favorable to Plaintiff, the numerous incidents of consumer confusion in the record show that Defendant's advertisements, even if literally true, were misleading. Accordingly, summary judgment on this ground is **DENIED**.

## IV.  Conclusion

Defendant Angel Flight Southeast, Inc.'s motion for summary judgment [#54] is **DENIED**.

**SO ORDERED**, this   31st   day of March, 2006.

/s/ Jack Camp
JACK T. CAMP
UNITED STATES DISTRICT JUDGE
